**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In Re: | : | |
| | : | |
| DAVID J. AIELLO, | : | Bankruptcy No. 12-70806-JAD |
| | : | |
| Debtor, | : | Chapter 7 |
| | : | |
| _____X | | |
| MARIA A. AIELLO, | : | Adv. No.  14-7001-JAD |
| | : | |
| Plaintiff, | : | Doc. No.  34 |
| | : | |
| - vs - | : | |
| | : | |
| DAVID J. AIELLO, | : | |
| | : | |
| Defendant. | : | |
| _____X | | |

**MEMORANDUM OPINION**

The matter before the Court is the Motion for Summary Judgment filed by the Plaintiff, Maria A. Aiello, regarding her Complaint to Determine Dischargeability Pursuant to 11 U.S.C. Section 523(a)(4) and/or (6). The Plaintiff, Ms. Aiello, seeks a determination by way of summary judgment that the debt owed by the Debtor, David J. Aiello, is nondischargeable.   This matter is a core proceeding over which the Court has the requisite subject-matter jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A) 157(b)(2)(I), 157(b)(2)(O) and 1334(b).  For the reasons more fully expressed below, the Court determines that Maria A. Aiello has met her burden of proof and, accordingly, the Motion for Summary Judgment shall be granted.

00015683

## I. Procedural History

The Plaintiff, Maria A. Aiello ("Maria") was married to Donald Aiello, the twin brother of the Debtor, David J. Aiello ("David"/Debtor).[1] Donald Aiello passed away on March 27, 1977. See Doc. No. 1, ¶6.  The Debtor became the executor of the estate of Donald Aiello after Maria renounced her appointment. See id., ¶7. Upon a petition seeking an accounting filed by Maria, David was ordered to file an accounting of his administration.   Maria filed exceptions to the accounting of Donald Aiello's estate in 2001 in the Court of Common Pleas of Elk County, Orphans' Court Division ("Orphans' Court") alleging self-dealing and breach of fiduciary duty on the part of the David. See id., ¶10.  After evidentiary hearing held over the course of several days, the Orphans' Court rendered its Findings of Fact, Conclusions of Law and Opinion. See id. ¶¶11, 14; Ex. A.

Among the findings and orders of the Orphans' Court was that David failed to act in the best interest of the estate including his self-dealing to promote his own interest to the detriment of the estate, failure to fulfill his obligations as executor and breach of fiduciary duties. See id., Ex. A at 24.

The Orphans' Court determination was ultimately affirmed on appeal filed by David to the Superior Court of Pennsylvania. See id. ¶¶11, 14; see also In re Estate of Donald J. Aiello, 993 A.2d 283 (Pa. Super. 2010).

---

[1] For purposes of clarity only, the Court will refer to the parties by their first names only.

In 2010, Maria entered judgment against David in the total amount of $1,021,723.34 based on the surcharges with interest imposed by the Orphans' Court. <u>See</u> Doc. No. 1, ¶15.  On September 6, 2012, David filed his voluntary Chapter 7 petition. Several extensions of time to file objections to dischargeability and/or discharge were granted to the Chapter 7 Trustee, with the consent of the Debtor. <u>See</u> Doc. Nos. 34, 39, 43, and 50.

On January 2, 2014, Maria filed her Complaint to Determine Dischargeability alleging that the opinion of the Orphans' Court, concluding that the Debtor engaged in acts of self-dealing and breached his fiduciary duties as the executor of the Debtor's brother's (and the Plaintiff's husband's) estate, supports a finding by this Court that her judgment against David for such breach of fiduciary duty should be determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and/or (a)(6).

Maria now moves for summary judgment to have this Court determine that the judgment against David arising from the state court adjudication on the merits, constitutes a nondischargeable debt.  The Court held a hearing on the Motion for Summary Judgment after which it ordered Maria to file a supplemental brief setting forth those portions of the Orphans' Court record relied upon to support her assertions; in particular the record showing that David's actions rose to the level of scienter now required by the Supreme Court case of <u>Bullock v. BankChampaign, N.A.</u>, 133 S. Ct. 1754, 1759, 185 L. Ed. 2d 922 (2013), for

purposes of § 523(a)(4).  The supplement and David's response thereto have been filed and the matter is now ripe for decision.

## II.  Summary Judgment Standard

The standard for determining a motion for summary judgment is set forth in Fed. R. Civ. P. 56, which is made applicable to adversary proceedings through Fed. R. Bankr. P. 7056.  The rule states that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party genuinely disputing a fact must support such assertion by citing to particular parts of the record or show that the materials cited do not establish the absence or presence of a material fact. See Fed. R. Civ. P. 56(c)(1).

It is not the role of the court to weigh the evidence on a motion for summary judgment; rather, the court is to determine whether there is a disputed, material fact for resolution at trial. See Nurick v. Burke (In re Burke), 523 B.R. 765 (Bankr. E.D. Pa. 2015)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).  A fact is "material" if proof of its existence or nonexistence might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  A dispute is genuine if there is sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. Id.  Summary judgment is appropriate if no material, factual issue exists and the only issue before the court is a legal issue. EarthData Int'l of N.C., LLC v. STV Inc., 159 F. Supp. 2d 844 (E.D. Pa. 2001).

The creditor has the burden of proving by a preponderance of the evidence that a debt is nondischargeable in an action to determine dischargeability. See e.g., Grogan v. Garner, 498 U.S. 279 (1991).

### III.  Parties' Arguments

The basis for Maria's Motion for Summary Judgment is that collateral estoppel, or issue preclusion, applies to prevent David from relitigating those issues that have already been decided by the Orphans' Court and Superior Court. Those holdings, it is argued, show that David breached his fiduciary duty and committed numerous acts of self dealing which satisfy the requirements for the discharge exceptions of sections 523(a)(4) and(6).

The Debtor contends that collateral estoppel does not apply in this instance as the Orphans' Court proceeding did not require a determination on the issue of the state of mind required by the Bullock decision for a determination of nondischargeability under §523(a)(4).  Therefore, the Debtor argues, there is an issue of disputed fact, that of scienter, that prevents the granting of the summary judgment motion.

### IV.  Collateral Estoppel Standard

The doctrine of collateral estoppel prevents a question of law or an issue of fact from being relitigated. See e.g., Nat'l Medical Imaging, LLC, 439 B.R. 837 (Bankr. E.D. Pa. 2009)( "Collateral estoppel prevents subsequent litigation of an issue of fact or law that had been determined and resolved in a prior court

proceeding."); <u>Day v. Volkswagenwek Aktiengesellschaft</u>, 464 A.2d 1313, 1318 (Pa. Super. 1983); <u>U.S. v. Stauffer Chem. Co.</u>, 464 U.S. 165, 171 (1984).    Collateral estoppel principles are applicable in litigation concerning exceptions to discharge. <u>See</u> <u>Grogan</u>, 498 U.S. at 284-285, n. 11.

Preclusive effect must be given to state court judgments by a federal court where the court of the issuing state would do so. <u>See</u> <u>LaMacchia v. Tarbell (In re Tarbell)</u>, 440 B.R. 668, 672  (Bankr. W.D. Pa. 2010)(citing <u>Marrese v. Am. Acad. Of Orthopaedic Surgeons</u>, 470 U.S. 373 (1985)).  The law of the adjudicating state is looked to when determining the preclusive effect of a state court judgment. <u>See</u> <u>Link v. Mauz (In re Mauz)</u>, 496 B.R. 777, 781 (Bankr. M.D. Pa. 2013 (<u>citing Delaware River Port Authority v. Fraternal Order of Police</u>, 290 F.3d 567, 573 (3d Cir. 2002)).

In Pennsylvania, where the state court judgment at issue was rendered, several factors must be shown in order for collateral estoppel to be applicable: (1) identity of issues; (2) final judgment on the merits; (3) identity of parties; (4) party seeking to relitigate had a full and fair opportunity to argue the issue in the prior proceeding. <u>See</u> <u>Tarbell</u>, 440 B.R. at 672; <u>Nat'l Medical Imaging, LLC</u>, 439 B.R. at 844); <u>Nationwide Mutual Fire Ins Co. v. George V. Hamilton, Inc.</u>, 571 F.3d 299, 310 (3d Cir. 2009).[2]

---

[2] Some courts list five elements, adding a fifth factor that the prior determination be essential to the judgment. <u>See</u> <u>e.g.</u>, <u>Prusky v. ReliaStar Life</u>

(continued...)

Thus, the issue presented is whether collateral estoppel applies to preclude David from relitigating the findings of the Orphans' Court and Superior Court and whether those findings along with the undisputed facts of record warrant entry of judgment as a matter of law that the debt to Maria is nondischargeable pursuant to 11 U.S.C. §523(a)(4) and/or (6).   Collateral estoppel can be invoked in bankruptcy to bar relitigation of issues relevant to dischargeability. See Smiedt v. Williams (In re Williams), Adv. No. 13-4062, 2014 WL 2624911, *4 (Bankr. E.D. Tex. June 12, 2014).

Neither a debtor nor a creditor may relitigate an issue that forms the basis for a nondischargeability theory where it has been actually litigated in a prior proceeding. Id.  The court applies the findings made by the state court to the required element of the asserted nondischargeability statute to determine any remaining factual issues. Id. at *3.  Should collateral estoppel apply, the ultimate issue of whether the state court judgment is a nondischargeable debt is a legal question requiring the application of federal bankruptcy law. See e.g., Hawkins v. Thomas, 478 B.R. 468 (Bankr. N.D. Ga. 2012).  That is, "[w]hile collateral estoppel may foreclose relitigation of issues decided in prior judicial proceedings, the ultimate issue of dischargeability is a legal question over which the bankruptcy

---

<sup></sup>²(...continued)
Ins. Co., 532 F.3d 252 (3d Cir. 2008).  However, the doctrine is "essentially the same".  See Tarbell, 440 B.R. at 672 (citing Witkowski v. Welch, 173 F.3d 192, 203, n. 15 (3d Cir. 1999)); see also Nationwide, 571 F.3d at 310, n. 12.

court has exclusive jurisdiction." <u>Caitlin Energy, Inc. v. Rachel (In re Rachel)</u>, 527

B.R. 529, 537 (Bankr. N.D. Ga. 2015)(citing <u>Hebbard v. Camacho (In re Camacho)</u>,

411 B.R. 496, 501 (Bankr. S.D. Ga. 2009)).

Even upon a determination of the applicability of collateral estoppel, it must

be determined whether the state court judgment and the underlying findings are

sufficient to warrant summary judgment regarding the dischargeability of a debt.

<u>See</u> <u>e.g.</u>, <u>Margolis v. Hensley (In re Hensley)</u>, Adv. No. 12-4180, 2014 WL 4956355,

*6 (Bankr. E.D. Tex. Oct. 1, 2014)("notwithstanding the application of collateral

estoppel principles, the question remains as to whether the findings referenced or

necessarily implied by the entry of the State Court Judgment are sufficient to

warrant summary judgment that the debt . . . is nondischargeable . . . under the

provisions of §523(a)(4) of the Bankruptcy Code.")

## V.  Applicability of Collateral Estoppel

The Court looks first to whether the elements of collateral estoppel are met.
In this instance, there does not appear to be any dispute that the second, third
and fourth elements of collateral estoppel are met.

As to the second requirement of a final judgment on the merits, this has

been met by the Orphans' Court decision finding David in violation of his fiduciary

duty and imposing the surcharges resulting in the judgment in favor of Maria.  The

third requirement, identity of the parties, has also been met here.  The parties in

the Orphans' Court action are the same as in this adversary; Maria is plaintiff and

David is defendant in both actions.  The fourth element, that the parties had a full and fair opportunity to litigate, has also been met.  In Orphans' Court, an evidentiary hearing was held on Maria's exceptions to the First and Final Account over the course of several days.  The Orphans' Court rendered a decision and order of court that is now the basis of the judgment that David now seeks to discharge.  Thereafter, an appeal was taken of the Orphans' Court's decision.  That appeal was also fully litigated and an affirming opinion rendered by the Superior Court of Pennsylvania.

It is the first element, of identity of issues, that requires more careful examination.  The matter decided by the Orphans' Court was the breaches of fiduciary duty and associated self-dealing.  (The Court does not understand Maria to contend that, for purposes of the applicability of collateral estoppel, the identity of the issues goes beyond those breaches and violations.)

The Debtor contends that there is not identity of the issues because in order to make a finding that a debtor committed defalcation, the second prong of §523(a)(4), the mental state of a debtor must be considered pursuant to the <u>Bullock</u> decision.[3]  Here, it is argued, the state court was not required to and did not make findings regarding David's mental state.  While originally an enticing argument, closer inspection shows that this argument overlooks that this Court can examine

---

[3] It is also contended that the fifth element of collateral estoppel that the determination was essential to the judgment is not present since there was no finding of mental state required.

the findings and conclusions regarding the breaches of fiduciary duty that were made by the Orphans' Court to the extent that there is identity of an issue. That is, in the Orphans' Court proceeding, among the issues was the Debtor's breach of fiduciary duty and resulting damages. This issue and the underlying facts supporting it are also at issue to a determination of nondischargeability under §523(a)(4) in this proceeding in which the Court is being asked to decide whether the debtor committed defalcation while acting in a fiduciary capacity. See Feng Li v. Peng, 516 B.R. 26 (D. N.J. 2014)(upholding the applicability of collateral estoppel to findings of N.J. Supreme Court to deny dischargeability under §523(a)(4)); Tomasi v. Savannah N. Denoce Trust (In re Tomasi), No. CC 12-1401, 2013 WL 4399229 (B.A.P. 9th Cir. Aug. 15, 2013)(finding identity of issues for purposes of deciding nondischargeability pursuant to §523(a)(4) where issues in both state court and adversary were whether debtor was a fiduciary and breached his fiduciary duty causing damages). The Court accordingly determines that the doctrine of collateral estoppel applies as to the findings and conclusions of the state court proceeding and subsequent appeal.

## VI. State Court Findings and Judgment

As a general matter, the Orphans' Court found that Maria was not knowledgeable about business or estate matters or the business conducted by her late husband. She therefore relied upon David, her brother-in-law, and accepted his advise to renounce her right to administer the estate in favor of him. Further,

Maria was not informed of certain transactions or was not made aware of the meaning and substance of other transactions conducted by David on behalf of the decedent's estate.

Maria raised seven claims against the Debtor in the state court action. Those claims were that David: (1) engaged in self-dealing with respect to decedent's one-third ownership interest in an entity known as Ridgway Cable Television, Inc.; (2) engaged in self-dealing with respect to decedent's ownership interest in an entity known as St. Mary's Pressed Metals, Inc.; (3) engaged in self-dealing and exercised a lack of reasonable care regarding a loan of $250,000 to St. Mary's Pressed Metals, Inc. from decedent's estate; (4) failed to administer the eighteen (18) shares of stock of St. Mary's Pressed Metals, Inc. of the decedent's estate; (5) engaged in self-dealing and exercised a lack of reasonable care regarding an investment of $50,000 in an entity known as Salberg Auto Wreckers; (6) engaged in self-dealing with respect to various parcels of real property owned by the decedent; and (7) failed to maintain proper care and custody of the records of the decedent's estate.

## A.  Sale of Stock of Ridgway Cable Television, Inc.[4]

As to the claim concerning Ridgway Cable Television, Inc., the state court found that the decedent owned one-third (100 of 300 shares) of the cable television company.  The other two-thirds were owned by David and another brother, Victor.

---

[4] See Doc. No. 34, Ex. A, ¶¶ 14-27; at 14-15.

Prior to the decedent's death, each had valued their shares at $400,000. Despite his knowledge of the value of each of their shares, David had the cable television company redeem the 100 shares of the decedent's estate for a $200,000 note. Thereafter, the assets of the cable television company were sold for $1.5 million dollars. Had the estate retained its interest in the cable television company, it would have had a one-third interest which would have, after the sale, been valued at $500,000. Instead, David and his brother were the only two remaining shareholders who each benefitted from the sale. David did not seek court approval for the redemption of the decedent estate's interest in the cable television company.

The Orphans' Court stated that the facts of the transaction raised "the spectre of self-dealing" and it imposed a $300,000 surcharge against David for such self-dealing.[5]

### B.  Sale of Stock of St. Mary's Pressed Metal, Inc.[6]

The second claim raised by Maria was that David engaged in self-dealing concerning the sale of stock of an entity owned in majority part by the decedent known as St. Mary's Pressed Metals, Inc. The estate's shares of stock in St. Mary's Pressed Metals, Inc. were sold, with the exception of eighteen shares. Among the buyers was David who purchased 125.5 shares of the estate's stock. The Orphans'

---

[5] The surcharge imposed was the difference between the value of $200,000 arbitrarily placed on the decedent's interest and the $500,000 purchase price received approximately one to two years later for a one-third interest in the assets of the cable television company.

[6] See Doc. No. 34, Ex. A, ¶¶28-32; at 15-17.

Court found that David did not make any effort to market the estate's shares either publicly or privately.   Compounding the lack of marketing was the fact that purchasers were a group of individuals who were also investors in an entity known as Ohio Carbon Group.   Among those individuals was David and an attorney who was the primary advisor to the estate.   The stock price was determined by David, the attorney and the law firm that had also represented Ohio Carbon Group.   The negotiations did not include any independent estate representative.   No court approval was sought or obtained for either the sale of stock to David's business associates nor for the transfer of shares to himself.

In addition, David failed to have a stock certificate issued for the remaining eighteen shares of St. Mary's Pressed Metals, Inc. stock held by the estate.

David argued that the sale of stock was to protect Maria who he asserted was in danger of losing her home as a result of a $600,000 loan guarantee made by the decedent.   It was determined by the Orphans' Court, however, that the guarantee was for a loan made to and secured by the corporate assets of St. Mary's Pressed Metals, Inc.  which were found to be more than sufficient to repay the loan in full. Moreover, there was no competent evidence to support David's assertion that a foreclosure action had been initiated.

The Orphans' Court found that David's actions in the sale and purchase of the stock of St. Mary's Pressed Metals, Inc. were "blatant acts of self-dealing that promoted his interest to the detriment of the Estate." It was ordered that the

transfer of the estate's shares of stock was void and subject to the imposition of a constructive trust in favor of Maria.

### C. Forgiveness of Loan from Estate to St. Mary's Pressed Metal, Inc.[7]

After the sale of the stock to himself and his associates, David loaned estate funds in the amount of $250,000 to St. Mary's Pressed Metals, Inc.  David did not disclose the loan to Maria.  At the time of the loan, the estate owned eighteen (18) shares and David at that point had become the owner of 125.5 shares.

St. Mary's Pressed Metals, Inc. made sporadic repayments and eventually had issued a check in the amount of $125,000 with the notation "paid in full" on it, despite still owing approximately fifty thousand dollars.  The Orphans' Court found that David advised Maria to accept the amount without first disclosing or explaining about the loan.

David also loaned St. Mary's Pressed Metals, Inc. money personally but did not offer any forgiveness of his personal debt. The findings of the Orphans' Court were that David offered no reasonable explanation for forgiving the estate's loan balance and that he failed to exercise due diligence in pursuing the balance of the note.  He "violated his duty to disclose and failed to handle the matter with the utmost fairness as required."  It was held that David engaged in impermissible self-dealing concerning the $250,000 loan to St. Mary's Pressed Metals, Inc., a

---

[7] See Doc. No. 34, Ex. A, ¶¶ 33-38; at 17-18.

business in which David had a substantial investment but the estate had only a minimal interest by comparison.

A surcharge in the amount of $49,268.12, the amount of forgiveness on the note to St. Mary's Pressed Metals, Inc., plus interest was imposed against David.

## D. Administration of Estate's Shares of St. Mary's Pressed Metal, Inc. Stock[8]

At the time of the opinion issued by the Orphans' Court, the eighteen shares of St. Mary's Pressed Metals, Inc. stock owned by the estate had not been transferred to Maria as beneficiary despite that they should have been transferred long ago.  As to those untransferred stocks, David was found to have acted with a "lack of diligence with respect to exercising his duties to the Estate."

## E.  Investment in Salberg Auto Wreckers[9]

David was fifty per cent (50%) owner of a business called Salberg Auto Wreckers.  After distributing fifty thousand dollars ($50,000) from the decedent's estate to Maria, David advised her to invest the monies in the Salberg Auto Wreckers business.  David then proceeded to use those funds to buy out the interest of the other fifty per cent (50%) partner.  The purpose of the $50,000 "investment" to buy out the other owner was not disclosed to Maria.  The business was subsequently sold approximately nine years later for $65,000.  Maria did not

---

[8] See Doc. No.  34, Ex. A, ¶¶ 39 - 41; at 18.

[9] See Doc. No.  34, Ex. A, ¶¶ 42 - 45; at 18 - 19.

receive a return on her investment over that time.  After closing costs, Maria had only $31,571.75 returned to her.

The encouragement by David to have Maria invest in a business of which he was a fifty per cent (50%) owner was found by the state court to clearly be an act of self-dealing.  It was also found to be improper for David to fail to inform Maria of his one-half share in the business.  David was surcharged for the loss incurred by Maria of $18,428.25 (determined by subtracting the amount returned to her of $31,571.75 from her initial investment of $50,000.)

### F.  Jointly Owned Real Estate[10]

The decedent held a recorded interest in three pieces of real property jointly with one or more family members.  As to the first of the properties, a two acre parcel referred to as the Van Aken property, David jointly owned the property with the decedent as tenants in common.  David conveyed the estate's interest in the property to himself.  No court approval was sought or obtained by David for the transfer.  As to a second property, referred to as the Jones Township property consisting of 205 acres, the estate's interest along with others was transferred to a family trust of another brother, Victor Aiello.  The interest of the estate in the third property, referred to as the Johnsonburg property, was transferred to Victor Aiello, et. ux.

---

[10] See Doc. No. 34, Ex. A, ¶¶ 46 - 56; at 19 - 20.

As to each piece of property, the Orphans' Court found that David transferred the estate's interest in the property without consideration for the conveyance. Nor did David properly account for the interest of the estate. Nor was court approval obtained for the transfers "despite the fact that there was an obvious conflict of interest . . . . " Specifically, as to the Van Aken property, David's contention that there was an understanding that the property was considered to be held as tenants with right of survivorship was found to be unsupported by the evidence.[11]   The Orphans' Court found that "[t]hese transactions not only present a problem because they reflect self-dealing, but David J. Aiello also failed to abide by a statutory duty in his dealings with these properties." The state court further stated that David "unequivocally violated his fiduciary duty with regard to these conveyances."

It was ordered that the transfer of the estate's interest in the property referred to as the Van Aken property to David was void and subject to the imposition of a constructive trust in favor of Maria.

---

[11] David testified concerning the legal title of the real property:

> We had an agreement between myself, my brother, Donald and my brother, Victor, with the right of survivorship. As long as the three of us owned it, there was a right of survivorship. Like I stated before, it was all my mother's doings. She didn't want one the brothers dying and a spouse sticking her nose in the business. That's the reason why that was always done that way. On some deed it's marked on some certificates, and some things it's not marked on. That's the way we operated.

See Doc. No. 55 at 15.

### G.  Care and Custody of Records[12]

The Orphans' Court held that David violated his duties to the estate by failing to maintain proper care and custody of the records.  Regarding Maria's contention that David failed to maintain proper care and custody of estate records, David asserted that the records had been maintained in a conference room at St. Mary's Pressed Metals Inc. and were destroyed in a fire that occurred there.  The Orphans' Court determined that the evidence, however, was to the contrary and that contention regarding storage of files was not credible.

David also contended that he did not have records as he believed that the estate administration ended long before.  The court stated that "David J. Aiello knew or should have known that he had ongoing responsibilities as executor of the Estate, including the duty to file an accounting."  The court also stated that "[o]ne may not avoid one's responsibility for wrongdoing by stating that he did not know or does not remember."

In addition to the above findings, holdings and surcharges imposed in connection with specific transactions, the Orphans' Court imposed an additional surcharge of $25,000 on David "[a]s a result of his failure to act in the best interest of the Estate, including his self-dealing to promote his own interests to the detriment of the Estate, his failure to fulfill his obligations as executor and the breach of his fiduciary duties . . . ."

---

[12] See Doc. No.  34, Ex. A, ¶¶ 9 - 13; at 20 - 21; at 24, ¶4.

## VII.  11 U.S.C. §523(a)(4) Defalcation

In the context of the Orphans' Court findings, the Court now considers the summary judgment request.  Section 523(a)(4) of the Bankruptcy Code provides that an individual cannot obtain a bankruptcy discharge from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).[13]  To prevail under § 523(a)(4), the plaintiff must prove that: (1) the defendant was acting in a fiduciary capacity; and (2) the defendant committed fraud or defalcation while acting in that capacity. See e.g., In re Scott, 294 B.R. 620, 629 (Bankr. W.D. Pa. 2003).  Defalcation has been defined as the failure to fully account for funds handled in a fiduciary capacity. See Larson v. Bayer (In re Bayer), 521 B.R. 491, 500 (Bankr. E.D. Pa. 2014)(citing In re Fogg v. Pearl (In re Pearl), 502 B.R. 429, 440 (Bankr. E.D. Pa. 2013)).

As to the first element, there is no dispute that David stood in a fiduciary relationship to Maria as executor of his deceased brother's estate of which Maria was a beneficiary.  It is the second element in this instance, that requires closer scrutiny; i.e, whether David's acts while in that fiduciary capacity, including those of "self-dealing" as determined by the state court, constitute "defalcation" under § 523(a)(4).

In 2013, the Supreme Court clarified the meaning of "defalcation" to require a finding of "an intentional wrong." Bullock v. BankChampaign, N.A., 133 S. Ct.

---

[13] Embezzlement and larceny are not at issue in this proceeding.

1754, 1759, 185 L. Ed. 2d 922 (2013).   Pursuant to the Supreme Court's holding

in Bullock, defalcation includes a culpable state of mind requirement involving

knowledge of, or gross recklessness in respect to, the improper nature of the

relevant fiduciary behavior.  Id. ("We include as intentional not only conduct that

the fiduciary knows is improper but also reckless conduct of the kind that the

criminal law often treats as the equivalent. . . . Where actual knowledge of

wrongdoing is lacking, we consider conduct as equivalent if the fiduciary

'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk'

that his conduct will turn out to violate a fiduciary duty.").

   For conduct to be deemed a defalcation, the fiduciary must either know the

conduct is improper, or the conduct must be "reckless" and "of the kind that the

criminal law often treats as the equivalent." Id.  As guidance, the Bullock Court

referred to the Model Penal Code's definition of recklessness:

> A person acts recklessly with respect to a material element of an
> offense when he consciously disregards a substantial and
> unjustifiable risk that the material element exists or will result from
> his conduct.  The risk must be of such a nature and degree that,
> considering the nature and purpose of the actor's conduct and the
> circumstances known to him, its disregard involves a gross deviation
> from the standard of conduct that a law-abiding person would observe
> in the actor's situation.

ALI Model Penal Code § 2.02(2)(c).

   To meet the recklessness requirement, therefore, there must be evidence that

the debtor was subjectively aware that his conduct might violate a fiduciary duty.

It is not enough that the debtor objectively *should have been* aware of the risk -

such a finding would only support a finding of criminal negligence, not recklessness. See MacArthur Co. v. Cupit (In re Cupit), 514 B.R. 42, 50 (Bankr. D. Colo. 2014). It must be shown that the debtor was "aware of the fiduciary duty and of the risk that his conduct would violate that duty ." Id. at 51. In determining the debtor's awareness, the court "should consider the probability that the fiduciary debtor's conduct will violate a fiduciary duty and the significance or magnitude of the pertinent fiduciary duty. This analysis focuses on how substantial the risk was." Jonathon S. Byington, *The Challenges of the New Defalcation Standard*, 88 Am. Bankr. L. J. 3, *26 (2014).

Inference of debtor's "conscious disregard" can be drawn from the particular facts. Cupit, 514 B.R. at 51; see also First Nat'l Title Ins. Co. v. Colson (In re Colson), Adv. No. 10-05007, 2013 WL 5352638, *35 (Bankr. S.D. Miss. Sept. 23, 2013)(surrounding facts and circumstances provide equivalent level of wrongdoing as debtor not likely to admit intention to divert trust funds).

In her complaint, Maria relies upon the Orphans' Court findings, conclusions and opinion that David engaged in various acts of self-dealing, breaching his fiduciary duties to the decedent's estate and impairing the value of that estate. As a result, it is argued, the judgment resulting from the surcharges imposed for such breaches ($300,000 with interest of from October 21, 1980; $49,268.12 with

interest from August 14, 1991; and $18,428.25 with interest from May 8, 1981) is nondischargeable.[14]

Unquestionably, and without dispute by the Debtor, the Orphans' Court found numerous breaches of fiduciary duty by the Debtor.  In considering an executor's fiduciary duty, the state court explained the fiduciary duty of an executor of a decedent's estate:

> 'An executor . . . is an officer of the orphans' court and accountable to such court for all his actions of commission and omission in the performance of his fiduciary duties.' In re Estate of Westin, 874 A.2d 139, 144 (Pa. Super. 2005)(quoting In re Estate of Thompson, 426 Pa. 270, 276, 232 A.2d 625, 628 (1967)).  In accordance with 20 Pa. C.S.A. §3311, "one aspect of the fiduciary duty of the executor is to 'take possession of, maintain and administer all the real and personal estate of the decedent.' In other words, the executor bears the responsibility to 'preserve and protect the property for distribution to the proper persons within a reasonable time.' In the performance of his fiduciary duties, the executor must exercise the 'judgment, skill, care and diligence that a reasonable or prudent person would ordinarily exercise in the management of his or her own affairs.' Id. (citations omitted)

> When the executor of an estate fails to fulfill his fiduciary duty of care, the court may impose a surcharge against him.  A surcharge is a penalty imposed to compensate the beneficiaries for loss of estate assets due to the fiduciary's failure to meet his duty of care; however, a surcharge cannot be imposed merely for an error in judgment.' Id. (citations omitted)

Doc. No. 34, Ex. A at 13.

---

[14]  Interest on a nondischargeable debt is likewise nondischargeable. See Bruning v. United States, 376 U.S. 358, 84 S. Ct. 906, 11 L. Ed. 2d 772 (1964); Leeper v. Pennsylvania Higher Educ. Assistance Agency, 49 F.3d 98 (3d Cir. 1995).

00015683

As to a finding of self-dealing, the Orphans' Court explained:

> The test of forbidden self-dealing is whether the fiduciary had a personal interest in the subject transaction of such a substantial nature that it might have affected his judgment in a material connection . . . *[T]he fiduciary's disqualifying interest need to be such as 'did affect his judgment' but merely such as 'might affect his judgment.'* . . . "If the record substantiates a finding of self-dealing, the executor may be properly surcharged for any amount he accepted in violation of his fiduciary duty."

Id. at 14 (citations omitted).

The determination of a breach or breaches of fiduciary duty does not, however, necessarily mean that a breach rises to a level of defalcation. See Pearl, 502 B.R. at 442. In this instance, however, the findings and conclusions of the Orphans' Court regarding the breaches of fiduciary duty are sufficiently detailed, numerous and weighty so as to lead this Court to conclude that they meet the standard required by Bullock.

The Court considers at the outset, as pointed out by the Orphans' Court, that Maria was not sophisticated in business and English was not her native language. Accordingly, she not only accepted the advise of her brother-in-law, David, but placed an inordinate amount of trust in him. David then failed to advise Maria of many of the transactions conducted by the estate.

Within this context, David then proceeded to conduct various transactions that the Orphans' Court found to be blatant impermissible self-dealing. There was not just one transaction but rather there were numerous transactions that were found to be self-dealing. Those transactions included the purchase of the St.

Mary's Pressed Metals Inc. stock, the $250,000 loan from the estate to St. Mary's
Pressed Metals, selling the estate's Ridgway Cable Television, Inc. stock to himself
and a third party, conveying the estate interest in the three different pieces of real
property (Ridgway Township, Jones Township and Johnsonburg), for no value, and
advising Maria Aiello to invest $50,000 of estate funds in a business in which he
was half owner.  Moreover, a surcharge was imposed against David for his failure
to act in the best interest of the estate, including his self-dealing and his failure to
fulfill his fiduciary obligations.

David also failed to obtain the requisite court approval for those
transactions that required it.  Nor did he get appraisals of property prior to sale.

In the case of <u>Leon v. Cordova (In re Cordova)</u>, Adv. No. 12-1197, 2013 WL
3934373, *4 (Bankr. D. N.M. July 30, 2013), the bankruptcy court determined that
the ruling of the state court regarding self-dealing and self-benefit, in and of itself,
was a "finding that Defendant knew 'the improper nature' of her actions, or at least
was grossly negligent with respect to those actions and her fiduciary duties."
Summary judgment was sought under 11 U.S.C. §523(a)(4) and (6) on the basis of
a state court finding that the debtor breached her fiduciary duties to the decedent,
decedent's estate and estate's beneficiaries owed pursuant to a power of attorney.
Prior to her bankruptcy filing, the debtor used her power of attorney to improperly
transfer real property of the decedent to herself.  Pursuant to court order, she
reconveyed the property to the decedent, who was then still living, only to reconvey

the property back to herself two months later.  The property was not reconveyed
until after the death of the decedent upon order entered in a probate action.  A
court order was required since the debtor asserted a claim to the property
contending that the decedent, her mother, wanted it sold upon her death without
probate with the proceeds distributed among her children.  The court found that
the debtor conveyed the property to herself for the purpose of self-dealing and self-
benefit.

In finding that the self-dealing and self-benefit constituted defalcation under
the standard required by Bullock, the bankruptcy court found that there was "no
way Defendant could have thought deeding the Property to herself *yet again*
comported with her fiduciary duties." Id. at *5.  The bankruptcy court found that
its conclusion was further supported by the state court findings that the debtor did
not tell her siblings of the power of attorney or the various deed transactions that
she conducted and did not attempt to market the property while it was in her
possession after her mother's death.  Those facts combined with the 'self-dealing
and self-benefit' finding left "no doubt Defendant knew full well that her actions
breached her fiduciary duties". Id.

As in Cordova, David's failure to keep Maria informed combined with the
findings of the Orphans' Court of David's self-dealing lead this Court to conclude
that David knew that his actions were breaches of his fiduciary duty.  At a
minimum, such actions were a conscious disregard of a substantial risk that such

conduct would result in a breach of fiduciary duty. See also In re Smiedt v. Williams (In re Williams), Adv. No. 13-4062, 2014 WL 2624911 (Bankr. E.D. Tex. June 12, 2014)(summary judgment of nondischargeability under §523(a)(4) granted based on state court's findings of attorney's self-dealing and intentional retention of client funds where course of conduct was not a product of mere inadvertence or negligence); Heers v. Parsons (In re Heers), 529 B.R. 734 (B.A.P. 9th Cir. 2015)(upholding grant of summary judgment of nondischargeability for pervasive and unjustified series of breaches of fiduciary duties by debtor reflecting a conscious and reckless disregard of risk to estate of not filing tax return).

The series of actions and inaction on the part of David exhibit a pattern, a theme, of behavior. This cumulative effect cannot be ignored. The cumulative effect of a debtor's behavior while acting in a fiduciary capacity was addressed in Fogg v. Pearl (In re Pearl), 502 B.R. 429 (Bankr. E.D. Pa. 2013). In Pearl, the debtor was the guardian of her incapacitated mother, in her mid-60s, who was in poor physical health, with a very modest income. The debtor expended slightly less than fifty per cent of her mother's estate in less than two years. She spent the remainder of the estate on the purchase of a townhouse in Florida in the debtor's own name under the alleged intent to generate rental income. The debtor did not seek the advise of counsel before purchasing the townhouse. Nor did she seek court approval for the purchase of the townhouse or for the various funds

expended from the estate which included payments to herself and for redecoration

of the townhouse.

In finding that the debtor's breach of fiduciary duty rose to a level of

defalcation as set in <u>Bullock</u>, the <u>Pearl</u> court found that the "cavernous gap

between the Debtor's legal duty and her actual conduct is sufficiently extreme and

obvious as to warrant the conclusion that either she was aware of, or she willfully

blinded herself to the impropriety of her conduct." 502 B.R. at 443.  Further, it was

stated:

> [t]his theme—that the Debtor managed the Estate for her own
> convenience and purposes—pervades the various disallowed expense
> reimbursements and represents a significant shortfall in the Debtor's
> conduct as a fiduciary.  This improper conduct is sufficiently obvious
> and occurred with enough frequency that if the Debtor was not aware
> of her improprieties, it could only be because she willfully turned a
> blind eye.

<u>Id.</u> at 444; <u>see</u> <u>also</u> <u>Stoughton Lumber Co., Inc. v. Sveum</u>, No. 14-3339, 2015 WL

3500237 (7th Cir. June 4, 2015)(permissible inference that debtor did know or at

the least was "playing ostrich", avoiding confirming his suspicion of violation of law

to preserve a "patina of innocence").

Similar to the debtor in <u>Pearl</u>, the theme of the Orphans' Court decision was

that of David managing the estate of his brother for his own convenience and

purposes.  Such conduct pervaded the various transactions representing his

shortfall as a fiduciary from which the inference of a "conscious disregard" or

"willful blindness" can be drawn.  The Orphans' Court opinion is replete with such

findings:

> - "During the administration of the Estate, petitioner was not informed of many of the major transactions **orchestrated** by respondent, who failed to disclose the meaning and substance of some of the transactions . . . ." Doc. No. 34, Ex. A, ¶3 (emphasis added).

> - "Respondent failed entirely to keep and protect the Estate records and to properly administer the Estate, **which he treated as a clearinghouse** for his own transactions and enterprises." Id., ¶10 (emphasis added).

> - "Respondent failed to preserve and protect the Estate property for distribution to the petition within a reasonable time and failed in the performance of his fiduciary duties by not exercising the assiduity, caution, acumen and expertise that a prudent or reasonable person would ordinarily utilize in the management of their own affairs." Id., ¶11.

> - "Respondent . . . did not safeguard promote or conserve the decedent's interest in [Ridgway Cable Television] to the benefit of the Estate or petition but, conversely **capitalized on his ability to negotiate** the decedent's interest in [Ridgway Cable Television] to his advantage." Id., ¶24 (emphasis added).

> - "The executor's judgment certainly appears to have been affected by his personal interest in the transaction and the Estate's position was compromised . . . ." Id. at 14.

> - "No independent representative on behalf of the Estate was a part of the negotiations and David J. Aiello's **objectivity was irreparably compromised**." Id. at 16 (emphasis added).

> - "By failing to inform Maria A. Aiello about the Estate's loan to [St. Mary's Pressed Metals, Inc.] David J. Aiello violated his duty to disclose and failed to handle the matter with the utmost fairness as required because the Estate had little to gain from this loan, while David J. Aiello had much to gain if [St. Mary's Pressed Metals, Inc.] continued to be a viable business." Id. at 17.

- "David J. Aiello failed to obtain court approval to make these transfers despite the fact that there was an **obvious conflict of interest involved** . . . ." Id. at 19 (emphasis added).

- "One may not avoid one's responsibility for **wrongdoing** by stating that he did not know or does not remember." Id. at 21 (emphasis added).

The gap between David's duty and his conduct was sufficiently obvious and occurred with such frequency that it can lead to the only conclusion - that David was at least willfully blind to the risk that his conduct would violate his fiduciary duty.

This conclusion is further supported by the fact that David was familiar with business practices, was a director of St. Mary's Pressed Metals, Inc., his attempts to explain his actions were not found to be supported by credible evidence, he failed to obtain court approval, failed to seek assistance of counsel, failed to obtain appraisals of property and failed to advise Maria of the various transactions. See Parisi v. D'Urso (In re D'Urso), Adv. No. 12-1685, 2013 WL 3286222 (Bankr. D. N.J. June 27, 2013)(debtor found to have committed defalcation as result of failure to comply with statutory requirements and return security deposits where debtor was sophisticated businessman and dominated affairs of company).

The risk that David either consciously disregarded or was willfully blind to was substantial and unjustifiable - that of violating his fiduciary duty without any accepted basis for so doing. See Cupit, 514 B.R. at 52. Any purported reasons for his actions, to the extent presented, were found to be either not credible or

unsupported by the Orphans' Court.  David cannot argue in this proceeding that

his motive behind the transactions was to protect Maria.  That argument was made

in Orphans' Court to no avail.  The court found that there was no credible evidence

in support of that argument.[15]  The numerous acts of self-dealing determined by

the Orphans' Court amount to a "gross deviation from the standard of conduct that

a law-abiding person would observe".  Id. quoting Bullock, 133 S. Ct. at 1759.

The Court recognizes and is mindful that summary judgment may not be

appropriate when state of mind is disputed and properly at issue.  See e.g., Jostofin

v. Met. Life Ins. Co., 372 F.3d 517, 524 (3d Cir. 2004)("The issue of intent is

'particularly inappropriate for resolution by summary judgment' because

evaluating state of mind often requires the drawing of inferences from the conduct

of parties about which reasonable persons might differ."); see also Byington, 88

Am. Bankr. L. J. at *36 (heightened mental standard from Bullock may make if

difficult to prevail on a summary judgment motion alleging nondischargeability due

to defalcation).   In this instance, however, the Court finds that for the reasons

outlined above the record is sufficient to establish the requisite state of mind of

David for purposes of this proceeding.  See Pettinaro Enters., LLC v. Continental

---

[15]  David's contention that he sold the stock of St. Mary's Pressed Metals,
Inc. in an effort to forestall the loss of Maria's home was found to be
unsupported by the evidence.  David's efforts to explain the loss of estate
records as being stored and destroyed in a fire were found not to be credible.  It
was also stated that no reasonable or rational explanation was provided by
David as to the compromise of the balance due on the loan from the estate to
St. Mary's Pressed Metals, Inc.

<u>Cas. Co.</u>, C.A. No. 09-139, 2010 WL 5126006 (D. Del. Dec. 10, 2010) (acknowledging that state of mind to be issue of fact for jury but finding that evidence in case was susceptible to only one reasonable interpretation and no reasonable jury could find plaintiffs unaware of misrepresentations made); <u>Sicherman v. Rivera (In re Rivera)</u>, 338 B.R. 318 (Bankr. N.D. Ohio 2006)(and cases cited therein)("Although summary judgment is generally inappropriate when intent is at issue, summary judgment may be granted where all reasonable inferences defeat the claims of one side.")

Having determined that summary judgment is appropriate to find that David committed defalcation, the debt to Maria is nondischargeable pursuant to 11 U.S.C. §523(a)(4).

## VIII.

The motion for summary judgment requested a finding of nondischargeability pursuant to §11 U.S.C. §523(a)((4) and/or (a)(6). Because the Court has determined that the debt is nondischargeable under 11 U.S.C. §523(a)(4), it need not address the arguments concerning section 523(a)(6) because it is now moot.

## IX.

For the reasons expressed above, the Court finds that the Debtor is precluded from relitigating the findings of the Orphans' Court, which were affirmed by the Superior Court of Pennsylvania. Further, those findings lead this Court to the conclusion that summary judgment is appropriate and, accordingly, the debt

owed by the Debtor, David J. Aiello to Maria A. Aiello shall be held

nondischargeable pursuant to 11 U.S.C. §523(a)(4).  An appropriate order shall

follow.

Dated: July 13, 2015

_____  bwf
JEFFERY A. DELLER
Chief U.S. Bankruptcy Judge

case administrator to serve:

John F. Kroto, Esq.
Guy C. Fustine, Esq.
Robert O Lampl, Esq.
James R. Walsh, Esq.
Office of U.S. Trustee

FILED
7/13/15 3:23 pm
CLERK
U.S. BANKRUPTCY
COURT - PGH

00015683

32